**DEVINE v. BILLINGSLEY.**

[77 Pac. 958.]

From Harney: MORTON D. CLIFFORD, Judge.

This is a suit to establish a trust in land. J. D. Billingsley having commenced an action against the Pacific Livestock Company, a corporation, to recover possession of section 2, and the southeast quarter of section 3, in township 34 south of range 34 east, in Harney County, the latter pleaded that it was in possession thereof as a tenant of Jennie Devine, plaintiff herein, who, on application therefor, was substituted as a party defendant, and, having filed an answer therein, alleging that she had no defense at law, but was entitled to relief arising out of facts material to her defense, and requiring the interposition of a court of equity, thereupon, as plaintiff, filed a complaint in the nature of a cross-bill, averring, in substance, that in 1891, and prior thereto, John S. Devine, her husband, purchased and paid the full consideration for certain real property, including the premises hereinbefore described, causing the deeds therefor to be executed to the defendant, to secure the payment of a debt due him ; that her husband died intestate September 13, 1901, leaving her his sole heir, and, his estate having been duly administered, the real property involved herein was distributed to her ; and that the debt due from her husband to the defendant has been fully paid, but he refuses to

reconvey the premises to her. The answer denied the material allegations of the complaint, and averred that defendant, complying with the provisions of the statutes of the United States, secured the legal title to 960 acres of land, which he conveyed to one Henry Miller, at the request of and upon agreement with Devine that he should receive in exchange therefor lands of equal value; that, in pursuance of such contract, and in payment for services rendered by the defendant for Devine, it was stipulated, on a settlement of their business, that the 800 acres sought to be recovered in the action of ejectment should belong to him, and also agreed that in consideration of the improvement of the premises, and of the payment of the taxes thereon by Devine, he was to have possession thereof, which he held at the time of his death. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree enjoining further prosecution of the law action, declaring that defendant held the legal title to the land in controversy in trust for the plaintiff, and requiring him to execute to her a deed thereof, and he appeals. The case was submitted on briefs under the proviso of Rule 16 of the Supreme Court: 35 Or. 587, 600.        AFFIRMED.

For appellant there was a brief over the names of *Thornton Williams* and *Lionel R. Webster*.

For respondent there was a brief over the name of *John Langdon Rand*.

MR. CHIEF JUSTICE MOORE, after stating the facts in the preceding terms, delivered the opinion of the court.

The transcript shows that in 1891, and prior thereto, J. S. Devine purchased nearly 15,000 acres of land in Harney County, Oregon, causing the deeds therefor to be executed to the defendant, to whom he was indebted in the

sum of $3,549, evidenced by a promissory note given May 1, 1890. Devine on January 7, 1893, borrowed from one E. P. McCornack a large sum of money, giving as security therefor a deed executed by the defendant for all the lands so conveyed to him, except section 2 and the southeast quarter of section 3 in township 34 south of range 34 east of the Willamette Meridian. The promissory note mentioned was fully paid, but just prior to Devine's death he again became indebted to the defendant in the sum of $836, which was thereafter discharged by plaintiff. McCornack, as plaintiff's witness, testified that soon after Devine's death he went to Harney County and met the defendant, who, in referring to the property which was supposed to belong to the decedent's estate, informed him that he held a section of land and certain cattle; saying that he helped to buy the latter, which had been assessed to him, and that the title thereto stood in his name. The witness having informed him that he furnished Devine more than $10,000 with which to buy cattle, inquired by what right he held the title to the land so claimed, to which he replied: "Well, you know that Devine has used my name very freely, and I have done a great deal for him, and I think I ought to have this land. I admit there was no financial consideration, but I have done enough to earn that land; and John [meaning Devine] intended I should have it. He always referred to it as my ranch, and when I was there he would say : 'Jeff, there is your ranch. How does it look'? And in conversation he always spoke to me as though it was my ranch, and I feel that I am entitled to it, and I am going to keep it." The witness further said that defendant told him Devine had used his name to such an extent that at one time he became so frightened that he conveyed all his own property to his wife. The transcript also shows that the defendant, under

45 OR.——40

various acts of Congress, secured from the United States patents for the south half of the southwest quarter of section 12, the northwest quarter, the south half of the northeast quarter, and the south half of section 13 in township 33 south of range 34 east, the northwest quarter of section 11 in township 31 south of range 35 east, and the northwest quarter of section 29 in township 30 south of range 36 east of the Willamette Meridian, containing 960 acres. Devine on December 19, 1890, entered into a contract with one Henry Miller whereby he agreed to convey, *inter alia*, the premises so patented to the defendant, who, on February 26, 1891, executed a deed therefor to Miller, receiving March 3d of that year from the latter and from other persons a deed for the 800 acres in question and for other lands.

The defendant, as a witness in his own behalf, denies that he told McCornack that he claimed the cattle which belong to Devine's estate, though they were assessed to him; that he did not say there was no " financial consideration " for the land which he claimed — testifying on that branch of the subject as follows: " That 'financial,' that is a word — I seldom ever use a word like that; that ' consideration '— I might have said 'there was no money consideration'; there wasn't any money taken." The defendant, in answer to the following question asked by his counsel: " Do you remember the conversation that you had with McCornack at that time in relation to the 800 acres of land ?"— replied: "Well, I— We had some conversation about it. I told him that I owned the land — owned 800 acres of land. I don't know whether I said ' eight hundred acres' or not. I might have said ' section ' or 'about a section,' or might have referred to it in them words; but I didn't, when talking to Mr. McCornack— I don't think there was ever anything come up like this. I don't remember everything that was said at all. I wasn't keeping everything down, or trying to. I was just

talking in a general way, like two men interested in the
same thing would in a conversation." The defendant
further says that the note for $3,549 was given for money
loaned to Devine in pursuance of an agreement entered
into in 1886 that it was to be used in buying land, the title
to which was to be taken in his name, whereby he was to
secure an undivided interest in the premises purchased
therewith, and that he never sold Devine any part of the
960 acres for which he secured patents, or received any
payment therefor, except the right to retain the 800 acres
set apart to him, but that he conveyed his homestead, pre-
emption, and desert claims to Miller at Devine's request,
and to aid the latter in securing a valuable stock ranch.
The defendant, answering the inquiry of his counsel in
relation to the circumstances under which his deed to Mc-
Cornack was executed, said: "Well, Mr. Devine wanted
to get some money from Mr. McCornack— He wanted
to get some money to stock his ranch up, and he said that
he would mortgage the whole works; mortgage all of it.
And I told Mr. Devine that, if I had any interest in the
land, I would like to have it set aside, and that he could
take his and do what he pleased with it. So he took his
part, and I deeded it to Mr. McCornack. I thought it was
a straight-up sale at the time. And what was left— this
800 acres— was left to me to pay me for my homestead,
preëmption, and desert claims." The defendant's wife, as
his witness, testified that, after joining in executing a
deed at Devine's request, he remarked to her husband:
"Well, Jeff, what of this land is left is yours. This land
is left is yours. Now all of it belongs to you." The plain-
tiff, as a witness in her own behalf, testified that in 1892,
while returning from Ontario, Oregon, the defendant, call-
ing her attention to the premises preëmpted by him, said:
"There is a piece of land that I sold to John" (meaning
Devine), and, in speaking of the transaction, further re-

marked, "All the rest of the boys got a horse, but I didn't get any," and that she said to him, "'I will speak to Mr. Devine about that,' and I did, and he got the horse." C. E. Kenyon, formerly county clerk of Harney County, and, at the time of the trial herein, engaged as a merchant at Burns, testified, as plaintiff's witness, that the day her husband died the defendant, referring to the deceased, said: "Mr. Devine was the best friend I ever had. He gave me the best part of the Alvard Ranch"—meaning the 800 acres in question.

The testimony given by the witnesses for the respective parties is contradicted in nearly every particular that is at all material, but, considering the attendant circumstances, we think the preponderance is with the plaintiff. It will be remembered that the land in controversy was conveyed to the defendant by Miller in March, 1891; that McCornack's deed was given in January, 1893; and that Devine died in September, 1901. McCornack testified that, when his deed was executed, Devine told him that the 800 acres in question, and also the northeast quarter of section 3 in township 34 south of range 34 east, constituting his homestead, must not be included, as the security given was ample, and that, referring to the land so exempted, he further said: "That is my heart's blood. That little ranch is my heart's blood, and I am going to keep it." The testimony discloses that in 1891 the land now claimed by the defendant was valued at about $5 an acre, but in the ten years following Devine improved the premises to such an extent that the 800 acres is reasonably worth $20,000; that he had the willows and sagebrush grubbed up, and an expensive canal constructed to conduct water from a creek to the premises which he cultivated, growing alfalfa thereon; that, though a fence surrounded the 800 acres when purchased, he subdivided the tract by partition fences, made about 60 acres into an

elk park, built several houses and a large barn, and paid all the taxes imposed thereon; and that the defendant during Devine's life was never known to assert any claim to the land. The defendant's testimony to the effect that Devine was to have the use of the land in consideration of the improvements which he might make thereon is, in our opinion, overthrown, when their kind and extent are considered. We also believe Mrs. Devine's testimony that the defendant informed her that he had sold to her husband the land which he had preëmpted. She seems to be corroborated in this particular by McCornack, who said the defendant at first admitted that no "financial consideration" existed for the land which he now claims, and by Kenyon, who said that the defendant told him that Devine gave him the best part of Alvard Ranch.

We believe a careful examination of the testimony and a consideration of the surrounding circumstances warrant the conclusion that the defendant holds the legal title to the 800 acres in trust for Devine's heirs; that he sold all the lands patented to him to Devine, though he did not execute a deed therefor until he conveyed the premises to Miller; that he received from Devine a horse as extra compensation for his preëmption claim, but retained the title to the 960 acres of land, probably on the assumption that, if he could be trusted to hold other lands, he would execute a deed for those patented to him when requested to do so; and that, the notes secured by the real property conveyed to him having been fully paid, no error was committed in requiring him to convey the 800 acres in question to Mrs. Devine, as the sole heir of her husband; and hence the decree is affirmed.

AFFIRMED.